SO ORDERED.

SIGNED this 20 day of July, 2011.

_____
                    Randy D. Doub
          United States Bankruptcy Judge

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

IN RE:

                                   **CHAPTER 11**

**SUD PROPERTIES, INC.,**                  **CASE NO. 11-03833-8-RDD**

        **DEBTOR.**

### ORDER DENYING MOTION TO DISMISS CASE

Pending before the Court is the Motion to Dismiss filed by First Bank on June 8, 2011 (the "Motion") and the Response to Motion to Dismiss filed by SUD Properties, Inc. (the "Debtor") on June 28, 2011 (the "Response").  The Court conducted a hearing on June 29, 2011 in Wilson, North Carolina to consider the Motion and the Response.  On July 8, 2011, the Court entered the Order Denying Motion to Dismiss the Debtor's case. This opinion sets forth the Court's reasoning for its decision.

### BACKGROUND

The Debtor filed a second petition for relief under Chapter 11 of the Bankruptcy Code on May 17, 2011.  The Debtor is a North Carolina corporation engaged in the business of owning and developing real estate.  Vernon D. Danford is the sole owner and manager of the Debtor.  In July of 2005, the Debtor was formed.  Its sole project was to develop a tract of land in Brunswick County, North Carolina known as "Springstone Subdivision" located at 211 Lanvale Road, Leland, North

Carolina (the "Property"). The Debtor began developing the tract in 2005 and by 2006 eighty-eighty (88) lots were platted with completed infrastructure. The Debtor sold eighteen lots to various buyers. The drop in the real estate market made it difficult for the Debtor to continue selling lots and as a result, the Debtor defaulted on its financial obligations.

Today the Debtor owns sixty-eight lots with completed infrastructure.[1] The Debtor has designated this case as a single asset real estate case as defined in 11 U.S.C. § 101 (51B).

First Bank, successor to Cooperative Bank, holds two promissory notes executed by the Debtor and secured by first and second deeds of trust on the Property. As of the petition date, the outstanding balances of the two promissory notes, including interest, were approximately $756,337.57 and $513,724.00 for a total obligation of $1,270,061.57. The Property is also subject to a third deed of trust in favor of Springstone Properties, LLC, an entity owned by the principal of the Debtor. As of the petition date, the balance of this claim including interest was approximately $3,960,000.00.

The Debtor defaulted on each of its loan obligations to First Bank. Both of the loans have fully matured. First Bank initiated foreclosure proceedings against the Property. On May 5, 2010, the eve of the foreclosure sale, the Debtor filed its first voluntary Chapter 11 petition. The Debtor's plan of reorganization (the "Plan") was confirmed on October 1, 2010 upon the entry of the Order Confirming Plan (the "Confirmation Order"). The Plan proposed to satisfy First Bank's indebtedness from the sale of lots in the Springstone Subdivision. The Plan provided a schedule whereby the Debtor was to sell a certain number of lots within certain time parameters. The schedule provided that all seventy lots were to be sold by January 31, 2014. The Plan further provided that in exchange for the treatment of First Bank's claims, First Bank was to "withdraw its Motion for Relief, withdraw its Objection to Sale,

---

[1]The Debtor transferred lots 58 and 60 of the Springstone Subdivision to Oliver & Friesen, PLLC on May 9, 2011 as payment for pre-petition legal services.

withdraw its Objection to Confirmation and amend its ballots to accept the Plan." Additionally, the Plan required First Bank to dismiss its foreclosure proceeding without prejudice and in the event of the Debtor defaulting on the terms of the Order, "[n]o future bankruptcy filing by any party shall stay a foreclosure proceeding brought by First Bank against the Springstone Subdivision relating to the First Bank Indebtedness."

The Debtor was unable to sell the lots in accordance with the schedule set forth in the Plan because the potential buyer was unable to close on the transaction. Accordingly, the Debtor defaulted under the terms of the Plan. The Debtor filed a Motion to Dismiss the first case. This motion was granted and the case was dismissed on April 11, 2011.

Upon the Debtor's default, First Bank initiated foreclosure proceedings against the Property. The foreclosure hearing was scheduled for May 17, 2011 in Brunswick County, North Carolina. The Debtor received notice of the foreclosure hearing and prior to the hearing, the Debtor contacted First Bank and informed its counsel that the Debtor intended to attend the foreclosure hearing. One hour prior to the foreclosure hearing on May 17, 2011, the Debtor filed a second petition for relief under Chapter 11 of the Bankruptcy Code. Clayton Cheek, as counsel for the Debtor, Mr. Danford, and Justin M. Lewis, as counsel for WASLAW, LLC, the Substitute Trustee, appeared at the foreclosure hearing before the Assistant Clerk of Court in Brunswick County (the "Clerk"). Ward and Smith, P.A. manages WASLAW, LLC. Additionally, Ward and Smith, P.A. represent WASLAW, LLC in foreclosure proceedings. Justin M. Lewis is an associate attorney with Ward and Smith, P.A.

At the foreclosure hearing, counsel for the Debtor requested a continuance for sixty days. Counsel informed the Clerk that the Debtor filed a second bankruptcy petition earlier that day. Counsel for the Debtor made the Clerk aware that the terms of the dismissal order in the Debtor's

3

previous Chapter 11 case stated that a future bankruptcy filing would not stay a foreclosure proceeding.

The Clerk continued the hearing for sixty days. An order was entered on June 3, 2011, continuing the foreclosure hearing. The order was signed by the Clerk who presided over the foreclosure hearing on May 17, 2011. The order stated: "[t]he Holder of the Note . . . has agreed to a continuance of the hearing in the matter, pursuant to the request of the Grantor." The foreclosure hearing was continued until July 18, 2011. The foreclosure sale is currently scheduled for August 17, 2011.

The Debtor's Statement of Financial Affairs reflect the Debtor received no income from 2010 to present. On Schedule B, the Debtor represented that $266.98 is held in a RBC checking account.

Under the terms of the Debtor's proposed plan, which was filed in this proceeding on May 18, 2011[2], one day after the filing of the petition, First Bank's claim is to be satisfied in exchange for a portion of the Property or "dirt" in full satisfaction of the debt owed to First Bank. Specifically, the Debtor proposes to surrender to First Bank nineteen lots, with an assumed lot sale price of $48,143.00 and thirteen lots with an assumed lot sale price of $48,143.00 in full satisfaction of the debt owed to First Bank.

## STATEMENT OF THE CASE

In support of its Motion to Dismiss, First Bank contends that because a prior order of this Court authorizes First Bank to foreclose on the Property there is nothing left for the Debtor to reorganize in its second case and therefore the case should be dismissed for "cause" pursuant to 11 U.S.C. § 1112(b)(1). In support of this position, First Bank contends that the Confirmation Order

---

[2]The Debtor filed its proposed plan of reorganization on May 18, 2011, and an amendment on June 28, 2011.

4

entered in the first bankruptcy case has the force and affect of *res judicata* and therefore, no order entered in the present case can affect the right of First Bank to foreclose on the Property. Further, First Bank argues that the Debtor's reorganization is objectively futile because the Debtor is unable to propose a confirmable plan or make interest payments on its obligations to First Bank as required of single asset real estate debtors pursuant to 11 U.S.C. § 362(d)(3). Additionally, First Bank argues that every established indicia of "bad faith filings" is present in the Debtor's case. Lastly, First Bank contends that this case was filed with subjective bad faith, for the improper purpose of delaying First Bank's previously authorized foreclosure on the Debtor's sole asset, which is not a proper purpose for filing a Chapter 11 bankruptcy proceeding. For the above reasons, First Bank requests the Court dismiss the Debtor's case for "cause" pursuant to 11 U.S.C. § 1112(b)(1).

In response, the Debtor argues that First Bank's foreclosure sale is currently pending and that the Debtor's second petition does not stay the foreclosure proceedings. As to the previously entered Confirmation Order, the Debtor contends that it does not have automatic effect in the current bankruptcy proceeding, but should be given appropriate evidentiary weight. The Debtor further contends that its proposed plan is feasible because of the change in circumstances evidenced by a recent appraisal of the Property which establishes the Debtor has no less than a 67% equity cushion. Additionally, the Debtor represents that the second case was not filed in bad faith, but was instead filed for the purpose of providing an alternative plan to pay the claims of First Bank and all other non-insider creditors in full.

For the reasons set forth below, the Court finds that First Bank has not established "cause" for dismissing this case pursuant to 11 U.S.C. § 1112(b)(1).

## **DISCUSSION**

Pursuant to 11 U.S.C. § 1112(b)(1) "the court shall convert a case under this chapter to a case

5

under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." The Fourth Circuit held in *Carolin Corp. v. Miller* that a petitioner's lack of good faith in filing may constitute "cause" for dismissal under 11 U.S.C. § 1112(b)(1). *Carolin Corp. v. Miller*, 886 F.2d 693, 699 (4th Cir. 1989) (noting that while the Bankruptcy Code does not specifically proscribe a "good faith filing requirement" applicable to Chapter 11 cases, "a generalized 'good faith filing' requirement appears implicit in § 1112(b)").

The Fourth Circuit utilizes a two-prong test for determining whether a Chapter 11 petition should be dismissed for lack of good faith. *Id.* at 700-01. A Chapter 11 case may be dismissed for lack of good faith if the movant can show both: (1) "the objective futility of any possible reorganization"; and (2) "the subjective bad faith of the petitioner in invoking this form of bankruptcy protection." *Id.* at 694. The Fourth Circuit explained:

> [s]uch a test obviously contemplates that it is better to risk proceeding with a wrongly motivated invocation of Chapter 11 protections whose futility is not immediately manifest than to risk cutting off even a remote chance that a reorganization effort so motivated might nevertheless yield a successful rehabilitation. Just as obviously, it contemplates that it is better to risk the wastefulness of a probably futile but good faith effort to reorganize than it is to risk error in prejudging its futility at the threshold.

*Id.* at 701.

While courts are required to make "separate inquiries" into both the objective futility and subjective bad faith prongs, the "proof inevitably will overlap" and "[e]vidence of subjective bad faith in filing may tend to prove objective futility, and *vice versa*." *Id.* at 701. First Bank bears the burden of demonstrating both objective futility and subjective bad faith by a preponderance of the evidence. *In re Woodbrook Associates*, 19 F.3d 312, 317 (7th Cir. 1994); *In re Surf City Investments*, No. 11-01398-8-RDD (Bankr. E.D.N.C. May 6, 2011) (citing *In re Player Wire Wheels, Ltd.*, 421 B.R. 864,

868 (Bankr. N.D. Ohio 2009)).   The Court finds that First Bank failed to carry its burden of demonstrating either objective futility or subjective bad faith.

The purpose of the objective futility prong is to "insure that there is embodied in the petition some relation to the statutory objective of resuscitating a financially troubled [debtor]." *Carolin Corp.*, 886 F.2d at 701 (citations omitted) (internal quotation marks omitted).  The inquiry should focus on "assessing whether there is no going concern to preserve . . . and . . . no hope of rehabilitation, except according to the debtor's terminal euphoria." *Id.* at 701-02  (citations omitted) (internal quotation marks omitted).

First Bank contends that the Debtor's case is objectively futile because the prior Confirmation Order has the effect of *res judicata* and therefore no order entered in the present case can affect the rights of First Bank to foreclose on the Debtor's property.   Central to First Bank's argument is the provision included in the prior Confirmation Order which states:  "[n]o future bankruptcy filing by any party shall stay a foreclosure proceeding brought by First Bank against the Springstone Subdivision relating to the First Bank indebtedness." Throughout the hearing, First Bank generally referred to this clause as granting it *in rem* relief.

First Bank cites to various cases in support of its position.  First Bank cites to a Southern District of Georgia bankruptcy case, where the court addressed the issue of whether the Internal Revenue Service ("IRS") could challenge the terms of a confirmed plan, when the IRS had notice and opportunity to object to the plan at the confirmation hearing.  *In re Bowen*, 174 B.R. 840, 846 (Bankr. S.D. Ga. 1994). There, the court confirmed a plan which included a provision that stripped the lien of the IRS down to the value of the real property securing the claim. *Id.* at 843.   After receiving notice and opportunity, the IRS failed to object or timely appeal from the confirmation order. *Id.*  The debtor filed an adversary proceeding for the purpose of, among other things, to enforce the provisions in the

plan, which stripped down the IRS lien and to offset tax liabilities against a tax refund which the debtor argued it was due. *Id.* The IRS argued that the plan provisions were contrary to law and the court was without jurisdiction to enter a confirmation order stripping the value of federal tax liens. *Id.* at 843-44. The bankruptcy court engaged in a discussion of the res judicata effect of confirmation orders. *Id*. at 844. Citing to numerous cases and Collier on Bankruptcy, the court acknowledged that a confirmation order "possesses all the requisite elements of common law res judicata" and the "doctrine of res judicata applies to all claims dealt with in a confirmed plan of reorganization." *Id.* at 846 (citations omitted). As a threshold matter, the court ruled that pursuant to 28 U.S.C. § 1334 it "plainly [had] jurisdiction over [the] matter." *Id.* at 844 n.1. The court held that res judicata applies to a confirmed plan of reorganization even if the plan contains provisions which are contrary to applicable law. *Id.* at 847. Therefore, the court ruled that the IRS should have objected to the plan at the confirmation hearing. *Id.* at 848. Accordingly, the IRS was unable to challenge the confirmed plan at a later date. *Id.* The court also held that the debtor's objection based on the alleged right of setoff was not "barred by res judicata because [d]ebtor's [p]lan preserved its right to challenge the IRS claim on those grounds." *Id.* at 855.

Additionally, First Bank cites to *In re Layo*, which addressed the issue of whether res judicata applied to a post-confirmation adversary proceeding filed by the debtor in an attempt to avoid a confirmed recorded lien, which was included in the debtor's plan, when the debtor had notice and opportunity, but failed to dispute the lien during the course of the bankruptcy proceedings. 460 F.3d 289, 295 (2nd Cir. 2006). That court found that res judicata applied to the adversary proceeding because the debtor had notice and opportunity to dispute the lien at the outset of its bankruptcy proceeding. *Id.*

As further support, First Bank cites to *U.S., Dep't of Air Force v. Carolina Parachute Corp.*, 907 F.2d 1469, 1473 (4th Cir. 1990) (holding that res judicata applied to post confirmation attempts of the Government to terminate a contract with a debtor when the plan of reorganization provided for the assumption of the contract and the entity had opportunity to but failed to object to the plan and failed to appeal the order); *In re Wolfberg*, 255 B.R. 879, 884  (holding that res judicata applied to the debtors' attempt to claim a homestead exemption post-confirmation when the debtors' plan provided for the sale of their residence without claiming their allowable homestead exemption); *In re Winterfeldt*, 28 B.R. 486, 488 (Bankr. E.D. Wis. 1983) (denying trustee's motion to rescind order confirming Chapter 13 plan when the trustee later had "second thoughts" about recommending the plan for confirmation.).

The Debtor responds that the issue of whether a confirmation order entered in a previously dismissed case is binding on subsequent cases presents an issue of first impression in the Eastern District of North Carolina.  The Debtor cites to two cases standing for the proposition that orders entered in previously dismissed bankruptcy cases should be given appropriate evidentiary weight, but are not necessarily enforced in subsequent bankruptcy cases.  *In re Friend*, 191 B.R. 391, 396 (Bankr. W.D. Tenn 1996) (holding that "drop dead" provisions included in "last opportunity" orders which provide debtors with one "last opportunity" to restructure a debt cannot preclude a court from determining that the automatic stay is applicable in a subsequent re-filing); *In re Jenkins Court Assocs. L.P.*, 181 B.R. 33, 37 (Bankr. E.D. Pa. 1995) (ruling that a pre-petition waiver of the automatic stay granted to the lender by a Chapter 11 debtor would not be enforced in a subsequent bankruptcy case, but would be considered as a factor in determining whether the lender should receive relief from the stay).

The Court finds the above cases instructive as to the res judicata effect of confirmation orders on subsequent litigation.  However, the cases cited to by First Bank are distinguishable in important particulars.  *In re Bowen*, is distinguishable, because unlike in *Bowen*, here the Debtor's first bankruptcy case was dismissed.  In *Bowen*, the creditor was seeking relief from a confirmation order entered in a case that was still pending and had not been dismissed even though the IRS received notice and opportunity to object.  *In re Bowen*, 174 B.R. at 851.  Here, the creditor seeks to dismiss the second filing based on language included in the Confirmation Order which was entered in a previously dismissed case.  In *Bowen*, the creditor was seeking relief from its treatment under the plan which was confirmed even though the creditor had received notice of its plan treatment and filed a claim in the debtor's case.  *Id.*  Unlike *In re Layo*, which involved the debtor attempting to avoid a lien through an adversary proceeding when the debtor had notice and opportunity to dispute the lien in his bankruptcy case, the Debtor here is not seeking to relitigate a matter in dispute at the time of the prior bankruptcy.  *In re Layo*, 460 F.3d at 295.  While the cases cited by First Bank discuss the finality of confirmation orders, the Debtor does not dispute that the provision contained in the previous Confirmation Order is binding upon the Debtor.  The Debtor is not attempting to stay First Bank's right to foreclose on the Property.  The Debtor argues, however, that its changed circumstances will allow it to pay the claim of First Bank in full.  Therefore, res judicata does not apply to the Debtor's second petition.

10

At the hearing, First Bank acknowledged that after careful negotiations it drafted and proposed the provision[3] for inclusion into the Confirmation Order. Further, First Bank contends that the provision provides First Bank with *in rem* relief.

Pursuant to 11 U.S.C. § 105, a bankruptcy court may grant *in rem* relief. However, the "order granting the relief must clearly specify the effect of the *in rem* relief granted." *In re Harris*, No. 04-01644-5-ATS (Bankr. E.D.N.C. June 6, 2005) (noting that *in rem* relief is an "extraordinary remedy," and request of such must be clear and unequivocal and the order must "clearly specify the effect of the *in rem* relief granted.") Here, it is not facially clear from the provision as to whether *in rem* relief is granted. The Court adopts the Debtor's proffered narrow reading of the provision and finds that the provision does not grant *in rem* relief. Even if the provision did provide First Bank with *in rem* relief, the Debtors have taken the position that the current bankruptcy filing in no way stays the right of First Bank to foreclose on its notes secured by the Property.

Read plainly, the provision states summarily that a foreclosure proceeding will not be stayed by any future bankruptcy filings. First Bank's foreclosure is currently pending. The provision does not prohibit the Debtor from filing a petition or plan of reorganization. The provision simply states that the automatic stay will not go into effect upon the filing of a future bankruptcy. Arguably, the language "no future bankruptcy filing" anticipates the possibility of a second bankruptcy filing. In addition, 11 U.S.C. § 349(a) also provides that the dismissal of a case will not prejudice a debtor with regard to the filing of a subsequent petition.

---

[3]"No future bankruptcy filing by any party shall stay a foreclosure proceeding brought by First bank against the Springstone Subdivision relating to the First Bank indebtedness." See Confirmation Order.

11

Therefore, the Confirmation Order allows First Bank to foreclose without interruption from this bankruptcy case. The provision only provides that a future bankruptcy filing will not stay the foreclosure. The Debtor's proposed plan seeks to provide First Bank with the indubitable equivalent of its claim, therefore satisfying the balance due on the notes upon which First Bank seeks to foreclose. The Debtor is not seeking to relitigate the stay provision of the Confirmation Order, but instead agrees that the bankruptcy case does not stay the foreclosure proceedings.

Additionally, First Bank contends that reorganization is objectively futile because the Debtor is unable to propose a confirmable plan or make interest payments on its obligations to First Bank as required of single asset real estate debtors pursuant to 11 U.S.C. § 362(d)(3). First Bank contends that because it has the right to foreclose on the Property the Debtor is left with nothing to reorganize. Further, even if the Debtor could put forth a plan of reorganization, First Bank contends that it is highly unlikely that the proposed plan will be confirmed prior to the foreclosure sale. The Debtor responds that its proposed plan is feasible and provides a means of satisfying the claims of First Bank in full. Additionally, the Debtor contends that the confirmation hearing is scheduled for July 21, 2011 and therefore, it is possible for the Court to confirm the Debtor's proposed plan before the foreclosure sale.

Even though the Debtor's proposed plan may ultimately prove to be nonconfirmable, at this stage, it is not necessary for the Debtor to prove its plan is confirmable. Alternatively, First Bank bears the burden of demonstrating both objective futility and subjective bad faith by a preponderance of the evidence as to why this case should be dismissed. *In re Woodbrook Associates*, 19 F.3d 312, 317 (7th Cir. 1994); *In re Surf City Investments*, No. 11-01398-8-RDD (Bankr. E.D.N.C. May 6, 2011) (citing *In re Player Wire Wheels, Ltd.*, 421 B.R. 864, 868 (Bankr. N.D. Ohio 2009)).

At this stage, the Court only needs to inquire into whether "there is no going concern to preserve . . . and . . . no hope of rehabilitation, except according to the debtor's terminal euphoria." *Carolin Corp.*, 866 F.2d at 701-702 (citations omitted) (internal quotation marks omitted). The proposed plan seeks to satisfy First Bank's claim in exchange for a portion of the Property or "dirt," in full satisfaction of the debt owed to First Bank. Specifically, the Debtor proposes to surrender to First Bank nineteen lots, with an assumed lot sale price of $48,929.00 and thirteen lots with an assumed lot sale price of $48,143.00 in full satisfaction of the debt owed to First Bank.

This Court and other courts across the country have acknowledged that creditors can receive the "indubitable equivalent" of their claim when the debtor surrenders real property in satisfaction of the claim to the creditor. *Sandy Ridge Dev. Corp. v. Louisiana Nat'l Bank (In re Sandy Ridge Dev. Corp.),* 881 F.2d 1346, 1354 (5th Cir. 1989), *rehearing den.* 889 F.2d 663 (holding that when a creditor receives all of its secured collateral at a value fixed by the bankruptcy court, it receives the indubitable equivalent of its secured claim and noting that the guarantors were not released from potential liability); *In re The Legacy at Jordan Lake, LLC*, No. 10-03317-8-RDD (Bankr. E.D.N.C. April 14, 2011) (denying confirmation of a "dirt" for "debt" plan, but recognizing that the court may consider a "dirt" for "debt" plan when sufficient evidence is presented as to the value of the property to be surrendered); *In re Sailboat Properties, LLC*, No. 10-03718-8-SWH, 2011 WL 1299301 at *8 (Bankr. E.D.N.C. March 31, 2011) (valuing the collateral to be surrendered at an amount less than the creditor's filed claim and dividing the secured creditor's claim into secured and unsecured parts when the debtor was surrendering all of the collateral); *In re Bannerman Holdings, LLC*, No. 10-01053-8-SWH, 2010 WL 4260003 at *8 (Bankr. E.D.N.C. Oct. 20, 2010) (confirming a "dirt" for

"debt" plan and holding that a partial surrender of collateral when using a conservative approach to valuation grants the indubitable equivalent of the claim).

Further, courts have confirmed plans whereby the debtor surrenders a *portion* of the collateral in *full* satisfaction of the claim. *In re Atlanta S. Bus. Park, Ltd,*, 173 B.R. 444, 449 (Bankr. N.D. Ga. 1994) (debtor's plan proposing to surrender a portion of the over secured creditor's collateral in full satisfaction of its claim was not per se fatal to confirmation); *In re Simons*, 113 B.R. 942, 947 (Bankr. W.D. Tex. 1990) (finding a plan fair and equitable that surrendered less than all of the collateral to an oversecured creditor as a credit upon the secured claim, the remainder of which was to be paid over time); *In re May*, 174 B.R. 832, 837 (Bankr. S.D.Ga. 1994) (holding that a creditor can be provided the "indubitable equivalent" of its claim when a plan surrenders only a portion of the collateral in full satisfaction of its claim).

Debtor proposes to surrender approximately $1,500,000.00 of property for $1,300,000.00 of debt. The lots to be surrendered are substantially similar and have completed infrastructure. At this point, it cannot be said that the Debtor has no reasonable prospect of rehabilitation. Other courts have confirmed the type of "dirt" for "debt" plans the Debtor now proposes. In addition, the proposed plan does not seek to extinguish Mr. Danford's personal guaranty on the obligations to First Bank. Additionally, the proposed plan would ultimately benefit the unsecured creditors as the proposed plan subordinates the insider third deed of trust to the unsecured claimants. If First Bank successfully foreclosed on the Property, the unsecured class would receive no payout.

The Debtor contends that its proposed plan is feasible because of the change in circumstances evidenced by the recent appraisal of the Property which establishes the Debtor has

no less than a 67% equity cushion.[4]  At the hearing, E.W. Merritt, Jr. a North Carolina State Certified General Real Estate Appraiser testified on the behalf of the Debtor.  Mr. Merritt has been a real estate appraiser for thirty-three (33) years. The Court admitted the valuation testimony of Mr. Merritt for the sole purpose of assessing the objective futility of possible reorganization.  Mr. Merritt testified that the fair market value of the Property, as of June 1, 2011, with entrepreneurial profit was $3,005,000.00 ($42,929.00/lot) and the fair market value of the Property without entrepreneurial profit was $3,370,000.00 ($48,143.00/lot).  These values were subject to extraordinary assumptions and hypothetical conditions, including that the clubhouse and pool amenities would be constructed as planned and in a timely manner.

As the Fourth Circuit recognized "it is better to risk the wastefulness of a probably futile but good faith effort to reorganize than it is to risk error in prejudging its futility at the threshold." *Carolin Corp.*, 886 F.2d at 701.  Here, the Court finds that First Bank failed to carry its burden of proof with respect to whether the Debtor's reorganization efforts are futile.

First Bank argues this case contains all of the "indicia" of bad faith filings recognized by other courts in assessing subjective bad faith and/or objective futility.  While the determination of bad faith is not based on a set of indicia or factors, the Fourth Circuit and other courts have recognized that certain factors could be of importance in assessing "either or both subjective bad faith and/or objective futility."  *Carolin Corp.*, 886 F.2d at 701 (citing *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986)).  The Fourth Circuit warned however that "[t]he dangers of overemphasis on particular indicia or patterns, of engaging in mere indicia-counting, and of forcing

---

[4]As of the petition date, the total outstanding balance of the two promissory notes was $1,270,061.57.

particular facts into previously identified patterns is obvious, and must be guarded against. We simply note, as have other courts, that a totality of circumstances inquiry is required; that any conceivable list of factors is not exhaustive; and that there is no single factor that will necessarily lead to a finding of bad faith." *Carolin Corp.*, 886 F.2d at 701 (citations omitted) (internal quotation marks omitted). Therefore, the Court will not rule out the "indicia" of bad faith as cited to by First Bank, but will instead incorporate these factors into its totality of the circumstances inquiry.

First Bank argues that the Debtor's case contains all of the following "indicia" of bad faith filings: (1) one asset debtor; (2) totally encumbered assets; (3) few employees; (4) inadequate cash flow; (5) few unsecured claims of relatively small amounts; (6) property in foreclosure; and (7) bankruptcy is the only way of forestalling loss of the property. *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986).

While the Debtor is a single asset real estate, its assets are not totally encumbered by non-insider secured claims. At the hearing, Mr. Danford, the principal of the Debtor, represented that the insider entity, Springstone Properties, LLC, an entity owned by him, held a third-position deed of trust on the Property. Springstone Properties, LLC's claim including interest is approximately $3,960,000.00. Mr. Danford testified that this claim will be subordinated to the unsecured class. If proper evidence of valuation is presented, indicating equity in the Property, then the Debtor's proposed plan would provide an opportunity for the unsecured class to receive a payout.

First Bank further contends the Debtor's filing was motivated by subjective bad faith, for the improper purpose of delaying First Bank's previously authorized foreclosure. The aim of the subjective bad faith prong is to "determine whether the petitioner's real motivation is to abuse the reorganization process and to cause hardship or to delay creditors by resort to the Chapter 11 devise

16

merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize his financial activities." *Carolin Corp.*, 886 F.2d at 702.

First Bank points to certain facts surrounding the Debtor's filing as constituting subjective bad faith. More specifically, First Bank represents the Debtor received a Notice of Foreclosure evidencing First Bank's intention to foreclose and after receiving the notice, filed its second case on the morning of the foreclosure hearing. First Bank contends that Mr. Danford and the Debtor's counsel appeared at the foreclosure hearing for the purpose of informing the Clerk of the filing and then showing her a copy of the petition and requesting that she delay the foreclosure hearing in violation of this Court's order. Additionally, First Bank argues the Debtor's principal and the Debtor's counsel knew full well that the Court's prior order made clear that the bankruptcy filing would not stay the foreclosure hearing but they nevertheless asked the Clerk to delay the foreclosure hearing for sixty days. Therefore, First Bank maintains the case was filed for the improper purpose of delaying its previously authorized foreclosure. The Debtor responds that it is making a good faith effort to reorganize and its motivation is to pay First Bank in full while providing a return to the Debtor's other creditors.

The Court heard extensive testimony relating to the foreclosure hearing that was held on May 17, 2011 in Brunswick County, North Carolina. As part of its evidence, First Bank moved to admit an affidavit of the Clerk who presided over the foreclosure hearing. The Debtor objected on the grounds of hearsay. The Court admitted the affidavit for the limited purpose of corroborating the testimony of Debtor's counsel, Clayton Cheek.

Mr. Cheek testified at the hearing as to the events that transpired on the day of the foreclosure hearing. Specifically, Mr. Cheek testified that prior to the foreclosure hearing, he

contacted Benjamin Waller, counsel for First Bank, and informed him, that he and Mr. Danford would be attending the foreclosure hearing. Counsel for the Debtor, Mr. Danford and Justin M. Lewis, as counsel for WASLAW, LLC, the Substitute Trustee, appeared at the foreclosure hearing before the Clerk in Brunswick County.   Ward and Smith, P.A. manages WASLAW, LLC. Additionally, Ward and Smith, P.A. represent WASLAW, LLC in foreclosure proceedings. Justin M. Lewis is an associate attorney with Ward and Smith, P.A. At the foreclosure hearing, Mr. Cheek testified that he requested a sixty (60) day continuance.  He did not have any knowledge as to why First Bank failed to appear at the foreclosure hearing.  He explained that he has attended many foreclosure hearings, and that it is not uncommon for him to request a continuance at the first scheduled foreclosure hearing.  He represented that court clerks routinely grant continuances.  Mr. Cheek further testified that at the foreclosure hearing he repeatedly informed the Clerk that a previous bankruptcy petition had been filed by the Debtor, and that an order was entered in that case stating that future bankruptcy filings would not forestall the foreclosure.  Mr. Cheek explained that the Clerk indicated she understood and that it was within her discretion to continue the foreclosure hearing.  The substitute trustee did not contest the continuance. Based on her discretion, the Clerk continued the foreclosure hearing for sixty (60) days.

An order was entered on June 3, 2011 continuing the foreclosure hearing.  The order was signed by Melanie Clark as the Assistant Clerk, Superior Court of Brunswick County.  The order states, "*the Holder of the Note secured by the above-referenced Deed of Trust, has agreed to a continuance* of the hearing in this matter, pursuant to the request of the Grantor.  The hearing in this matter has been continued until **July 18, 2011 at 11:30 a.m.**" (emphasis added).  The order states that First Bank agreed to a continuance of the hearing.  The order is in direct conflict with the

affidavit presented by First Bank in which the Clerk represented that "the [second] bankruptcy petition filed by SUD Properties, Inc., and Mr. Cheek's appearance at the hearing to show me an electronic copy of the bankruptcy petition, were substantial factors in my decision to allow the 60 day continuance."

Mr. Danford testified that he filed the second bankruptcy case for the purpose of paying its debts to First Bank in full and for the purpose of preserving his equity in the Property. Mr. Danford testified that he had invested his life savings of four million dollars into the Springstone Subdivision and that his family had also invested money into the project. He testified that he knew the second bankruptcy would not affect the foreclosure and he was aware that the foreclosure proceeding was currently pending.

Based on the testimony of Mr. Cheek and Mr. Danford, the Court finds that the Debtor did not file its second petition with subjective bad faith. Mr. Cheek's actions represent those of an attorney zealously representing his client.[5] He filed a petition on behalf of his client prior to a foreclosure hearing and then appeared at the foreclosure hearing on behalf of his client. He asked for a continuance as he stated he had done many times in other cases. He notified First Bank that he would be attending the foreclosure hearing, but they failed to appear. Justin Lewis did appear on behalf of the Trustee. The order continuing the hearing, states that First Bank agreed to the continuance, which is not consistent with the statements in he affidavit of the Clerk. Therefore, the

---

[5]Mr. Cheek testified that he was prepared to review all documentation in support of the foreclosure proceedings, had such been introduced at the foreclosure hearing. Mr. Cheek further stated that objections may have been raised at the May 17, 2011 foreclosure hearing, in regard to an attorney for Ward & Smith, P.A. representing both the Substitute Trustee, WASLAW, LLC and First Bank.

Court gives more weight to Mr. Cheek's live testimony and concludes that the Debtor did not file its second petition with bad faith.

At the hearing, First Bank cited *In re Villa Madrid*, 110 B.R. 919 (B.A.P. 9th Cir. 1990) in support of its position that the Debtor's case was filed with subjective bad faith. There, the Bankruptcy Appellate Panel of the Ninth Circuit addressed the issue of whether sanctions should be imposed upon debtor and counsel for bad faith filing. *Id.* at 922. The debtor initially filed its bankruptcy petition in Texas and the case was later dismissed by a stipulated order. *Id.* at 920. The stipulation order provided that the debtor would make certain payments to the creditor. *Id.* at 921. Further, it provided that in the event of default the appellees would "have the absolute right to post the subject property for foreclosure in December, 1988 and to subsequently foreclose on the subject property by Trustee's Sale in January, 1989." The order stated that the case was "dismissed with prejudice." *Id.* at 921. The debtor defaulted and the property was scheduled to be sold at a foreclosure sale. *Id.* at 921. The debtor filed its second bankruptcy petition on the preceding business day prior to the foreclosure sale in California. The court noted that when determining whether sanctions are warranted, the inquiry "is not whether the second bankruptcy petition was filed in bad faith, but rather whether the appellant knew, or after reasonably diligent inquiry should have known, that the filing of the petition would be in bad faith." *Id.* at 922. The court recognized that the "debtor's primary purpose in refiling in a new venue, before a new court, using new counsel, on the last day before the Texas foreclosure sale, was to avoid the effects of the stipulated Dismissal Order, and thereby to delay the appellees in their efforts to obtain relief from stay in time to proceed with the scheduled foreclosure sale without seeking modification of the Dismissal Order in the court familiar with the history of the case." *Id.* at 924.

20

*In re Villa Madrid*, is somewhat similar to the case at hand, but is ultimately distinguishable on its facts.  In *Villa Madrid*, the dismissal order provided that the appellees would have the "absolute right" to foreclose on the property, and in the event of default the case would be "dismissed with prejudice." *Id*. at 921. Further, the Ninth Circuit Bankruptcy Appellate Panel, gave significant weight to the fact that the debtor chose to file the second petition in California, a jurisdiction unfamiliar with the debtor's prior case, while the first petition, the foreclosure and the debtor's principal assets were located in Texas.  *Id*. at 923.  The court stated that the "debtor, however, elected to engage new counsel and refile in a distant forum at the last possible moment before the foreclosure sale. One can infer that the debtor's purpose was to avoid the court that was in the best position to evaluate the merits of the debtor's assertions, and to impede the appellees' efforts to conduct the foreclosure sale to which the debtor had agreed five months earlier." *Id.* at 923.

In the present case, the language in the prior confirmation order is anything but specific.  The words "in rem" do not appear in the order and it does not appear to grant to First Bank an absolute right to foreclose on the property.  The language in fact, anticipates a second filing by stating that "[n]o future bankruptcy filing . . . shall stay a foreclosure."  The language does not state that the first case will be dismissed with prejudice, nor does it specifically provide for in rem relief.  Additionally, the *Villa Madrid* Court found it significant that the debtor chose to file its second petition in a foreign forum unfamiliar with the facts of the debtor's first case, which has not occurred here. Therefore, the Court finds the case distinguishable.

## CONCLUSION

21

Considering the totality of the circumstances, the Court finds that dismissal of this case at this time is not warranted.  First Bank has failed to show by a preponderance of the evidence the objective futility of any possible reorganization and the subjective bad faith of the Debtor.  Whether or not the Debtor's proposal will be the "indubitable equivalent" to satisfy the claims of First Bank will be decided at the confirmation hearing. Today, the Debtor has simply survived the motion to dismiss. Therefore, the Motion to Dismiss is **DENIED.**

**SO ORDERED.**

**END OF DOCUMENT**